**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **JOHN P. SMITH AND TINA L. SMITH,** | § | |
| **INDIVIDUALLY, AND AS NEXT FRIEND** | § | |
| **TO J.A.S., A MINOR** | § | |
| *Plaintiffs,* | § | |
| **v.** | § | **CIVIL ACTION NO. 2:09-cv-00059** |
| | § | |
| **GRACO CHILDREN'S PRODUCTS INC.,** | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' FOURTH AMENDED COMPLAINT AND JURY DEMAND**

TO THE HONORABLE COURT:

Plaintiffs, John P. Smith and Tina L. Smith, Individually, and as Next Friend to J.A.S., a minor, file this, their Fourth Amended Complaint and Jury Demand against Defendants, Graco Children's Products Inc., and Hyundai Motor America, Inc. and for cause-of-action respectfully show this court as follows:

**<u>Parties and Jurisdiction</u>**

1.     The amount involved in this action is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs.  This Court has jurisdiction of this case by the reason of the amount-in-controversy and by reason of a complete diversity-of-citizenship.

2.     Plaintiffs, John P. Smith and Tina L. Smith, are the natural parents of J.A.S., a minor. At all relevant times, Plaintiffs are and were residents of the State of Texas.

3.     Defendant, Graco Children's Products, Inc. ("Graco") is a non-resident Delaware corporation engaged in and doing business in Texas.  Graco has answered and appeared.

4.      Defendant, Hyundai Motor America, Inc. (Hyundai), is a non-resident California corporation engaged in and doing business in Texas.  Hyundai has answered and appeared.

5.      Products manufactured by Defendants are routinely sold in the Eastern District of Texas, Marshall Division.

6.      Defendants purposefully market and sell their products through local retailers in the Eastern District of Texas, Marshall Division for the purpose of deriving profit and have in fact derived profits from the sale of products in the Eastern District of Texas, Marshall Division.

7.      Defendants plan to continue selling their products in the future in the Eastern District of Texas, Marshall Division.

8.      Defendants' liability in this case arises from or is related to the sale and distribution of products in the State of Texas.

9.      Accordingly, Defendants have purposefully availed themselves of the privileges and benefits of placing their products into the stream of commerce in Texas and thereby conduct business in the State of Texas.

10.     The Court's exercise of personal jurisdiction over Defendants comports with due process.

11.     At all times relevant to the causes of action asserted herein, the non-resident Defendants, have had continuing and systematic contact with the State of Texas by delivering their products into the stream of commerce with the expectation that the products would reach consumers within the State of Texas.  Further, Defendants have had minimum contacts with Texas and are doing business in Texas, by, among other things: entering into contracts, by mail or otherwise, with residents of the State of Texas and contracting for performance in Texas, recruiting Texas

residents for employment inside and\or outside the state and committing torts in the State of Texas.  The causes of action asserted herein arise from such contact and business.

## Venue

12.     At all times materials to this incident, Defendants were and are doing business in and throughout the Eastern District of Texas.

13.     The Defendants conduct business in and sell products in and throughout the Eastern District of Texas, including the Marshall Division.

14.     Venue in this case is proper in the Eastern District of Texas by virtue of Title 28 U.S.C. § 1391(a)(1)(2) and/or (3).   As corporations, Defendants are deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced.   28 U.S.C. 1391 (c).  Therefore, both Defendants are subject to personal jurisdiction in the Eastern District of Texas and for venue purposes are deemed to reside in the Eastern District of Texas. Furthermore, the collision involved in this case occurred in the Eastern District of Texas.

## Factual Background

15.     On March 16, 2007, J.A.S. was properly restrained in a Graco TurboBooster  child restraint system (Model No. 8491QNY; Manufactured August 24, 2006; Serial Number JJ0824061994129).  This child restraint was place in the number 6, right rear seating position of a Hyundai Sonata (Model Year 2004; VIN KMHWF25HX4A045221).

16.     This child restraint system was designed, manufactured and marketed by Graco.

17.     The vehicle in question was designed, manufactured and marketed by Hyundai Motor America.

18.     The day in question, J.A.S. was a right rear seat passenger in a vehicle driven by his mother.  The vehicle was eastbound on State Highway 21 in Nacogdoches County, Texas when another vehicle traveling westbound lost control and swerved directly in front of the Smith vehicle.  The vehicle occupied by J.A.S. then t-boned the westbound vehicle.

19.     In this collision, the child restraint system failed to properly restrain J.A.S. by allowing the upper portion of his body to become unrestrained and hyperflex over the shoulder restraint that was now off his shoulder.

20.     As a proximate result of the above-described product failure, J.A.S. sustained serious and permanent injuries.

## Strict Products Liability

21.      At all material times hereto, Defendants, were "Manufacturers" of the child restraint and the vehicle as the term "manufacturer" is defined in Chapter 82.001(4) of the Texas Civil Practices and Remedies Code Annotated.

22.     The child restraint at issue in this suit was designed, manufactured, constructed, marketed and/or distributed by and through the agents and/or representatives of Graco.

23.     The vehicle at issue in this suit was designed, manufactured, constructed, marketed and/or distributed by and through the agents and/or representatives of Hyundai Defendant.

24.     The Defendants were regularly engaged in the business of supplying or placing products, like the products in question, in the stream of commerce for use by the consuming public, including the Smiths.  Further, such conduct in selling items such products was solely for commercial purposes.

25.     The products in question remained unchanged from the time they were originally manufactured, distributed and sold by Defendants until they reached the Smiths.  Stated another way, the products in question were defective and in an unreasonably dangerous condition when they left the hands of the Defendants and remained defective and unreasonably dangerous at all times thereafter until they ultimately caused the Plaintiffs' damages.

26.     At the time the products were placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that the products would be used by persons such as the Smiths in the manner and application in which they was being used at the time of J.A.S.'s injuries.

27.     With respect to the design of the products in question, at the time it left the control of the Defendants there were safer alternative designs.  Specifically, there were alternative designs that, in reasonable probability, would have prevented the injuries to J.A.S.  Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of the Defendants by the application of existing or reasonably achievable scientific knowledge.

28.     At the time the child restraint in question left the control of Graco it was defective and unreasonably dangerous in that it was not adequately designed, manufactured or marketed to minimize the risk of injury or death.  By way of example and without limitation, the product in question was unreasonably, dangerously defective in the following ways:

   a.     the child restraint system in question was unreasonably, dangerously, defectively designed in that the restraint system is not properly designed to insure the shoulder portions of the belt properly fits a child of the recommended size the restraint indicates it is safe for.  This made the child restraint system unreasonably, dangerously, defectively designed for the system's intended and

reasonably foreseeable uses;

b.      the child restraint system in question was unreasonably, dangerously, defectively designed in that the shoulder strap on the restraint system may allow the child to roll out of the shoulder restraint.  This made the system unreasonably, dangerously, defectively designed for the system's intended and reasonably foreseeable uses;

c.      the child restraint system in question was unreasonably, dangerously, defectively designed in that it does not contain an integrated shoulder harness system to prevent a small child from slipping through a shoulder restraint.  This made the child restraint system unreasonably, dangerously, defectively designed for the system's intended and reasonably foreseeable uses;

d.      The child restraint system in question was unreasonably, dangerously, defectively designed in that the armrest and associated belt guides are not of adequate strength to withstand crash forces.  This allows for improper belt movement leading to enhanced injury.  This made the system unreasonably, dangerously, defectively designed for the system's intended and reasonably foreseeable uses.

e.      the child restraint system in question was unreasonably, dangerously, defective in that it did not contain adequate instructions or warnings on the proper and safe use of the child restraint system and did not instruct or warn as to the manner to avoid risks and danger involved.  Specifically, the child restraint system did not warn that the system is inadequate to protect small children in foreseeable collisions.  These failures made the child restraint system unreasonably, dangerously, defective for its intended and reasonably foreseeable uses; and

f.      the child restraint system in question was unreasonably, dangerously, defective in that it fails to warn of the risks, nature and extent of danger associated with a child slipping out of the shoulder portion of the restraint and only being restrained by the lap belt.  Further, the child restraint is defectively marketed in that the Defendant indicates the restraint is safe for someone J.A.S.'s size, when it is not; and the child restraint system was unreasonably, dangerously, defective in that the warnings and instructions provided, if any, were not any form that could reasonably be expected to catch the attention of the reasonably prudent person in circumstances of the product's intended or reasonably foreseeable uses.

29.     At this time Plaintiff does not believe defects that caused the injury exist with Hyundai.  However, out of an abundance of caution, Plaintiff pleads as follows:

At the time the Hyundai Sonata in question left the control of the Hyundai Defendant it was

defective and unreasonably dangerous in its design.

30.     The above unreasonably dangerous defects, among others, in the products in question were the proximate and producing cause of Plaintiffs' damages.

31.     If Defendants assert that they did not manufacture the products in question, then plaintiffs assert that they are liable to the harm caused to the plaintiffs because 1) the manufacturer of the product is not subject to the jurisdiction of this court and/or 2) defendants actually knew of the defect to the product at the time it supplied the product and the Plaintiffs' harm resulted from the defect.  See TEX. CIV. PRAC. & REM. CODE §82.003(a)(7)(B) and (a)(6).

32.     Plaintiffs further contend that Defendants are not entitled to a rebuttal presumption that it is not liable for any injury to Plaintiff caused by the formulation, labeling or design of the product because they have not established that the product's formulation, labeling and design complied with the mandatory standards adopted by the DOT.   Additionally, in the event that Defendants do establish compliance with an FMVSS, Plaintiffs will present evidence that the standard is inadequate to protect the public from unreasonable risks of injury or damage.

## Negligence and Gross Negligence

33.     Defendants have a duty to manufacture, distribute and sell products that are not unreasonably dangerous.   Defendants also have a duty to reasonably test products.  Defendants, acting by and through their agents and/or representatives breached this duty and were thereby negligent and grossly negligent, careless and reckless in designing, manufacturing, marketing, distributing and selling the products in question.  As a proximate result of one or more of the aforementioned negligent and grossly negligent acts or omissions of defendants, Plaintiffs' sustained serious and permanent injuries and damages.

**Loss of Services**

34.     John P. Smith and Tina L. Smith are the natural parents and guardians of J.A.S.  As the natural parents of J.A.S., they are entitled to receive damages associated with J.A.S.'s loss of services associated with the injuries to their baby.

**Bystander Claims**

35.     Tina A. Smith is J.A.S.'s biological mother and natural guardian.  Further, Tina L. Smith was in the automobile collision when J.A.S. was seriously injured.  She was in close proximity to J.A.S. and had sensory observation of his injuries.  Accordingly, Tina L. Smith is entitled to recover mental anguish damages as a bystander to J.A.S.'s serious and permanent injuries.

**Damages**

36.     The unlawful acts and practices described above are and were a producing and proximate cause of J.A.S.'s serious and permanent injuries.  Those damages include, but are not limited to: physical pain and mental anguish sustained in the past and that will, in reasonable probability be sustained in the future; loss of earning capacity that, in reasonable probability, will be sustained in the future; disfigurement sustained in the past and that, in reasonable probability, will be sustained in the future; physical impairment sustained in the past and that, in reasonable probability, will be sustained in the future; and medical care in the past and medical care that, in reasonable probability, will be sustained in the future.

37.     With respect to John P. Smith and Tina L. Smith, and in addition to the items detailed above, they are entitled to receive damages for J.A.S.'s loss of services and Tina L Smith's mental anguish damages.  John P. Smith, as next friend and as parent to J.A.S., is also entitled to

recover medical bills in the past and medical bills that in reasonable probability, will be incurred to care for J.A.S. prior to his 18th birthday.

## **Jury Demand**

38.     Plaintiffs respectfully request that a jury be impaneled to decide the factual issues of this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that upon final trial, Plaintiffs have judgment against Defendants, jointly and severally, for those damages described above and in the full amounts allowed by law, specifically including, but not limited to:

     a.     A judgment in excess of the jurisdictional limits of this Court;

     b.     pre-judgment interest;

     c.     post-judgment interest;

     d.     costs and expenses; and

     e.     all such other relief, whether at law or in equity, to which plaintiffs may show themselves justly entitled.

Respectfully submitted,


  _/s/_Andrew L. Payne_____
**ANDREW L. PAYNE** (Attorney-in-Charge)
State Bar Card No. 00791416
**PAYNE MITCHELL LAW GROUP, L.L.P.**
Suite 1400, Park Place on Turtle Creek
2911 Turtle Creek Boulevard
Dallas, Texas  75219
(214) 252-1888 (p)
(214) 252-1889 (f)
andy@paynemitchell.com


And


**LUKE BICKHAM**
State Bar Card No. 00787080
**NEGEM, BICKHAM & WORTHINGTON**
440 South Vine
Tyler, Texas 75702
(903) 595-4466 (p)
(903) 593-3266 (f)
luke@negembickhamlaw.com


**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certified that on November 20, 2009, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Stephen Drinnon**
**Meridith Constant**
The Drinnon Law Firm, PLLC
1700 Pacific Avenue, Suite 2230
Dallas, TX  75201

and

**Holly A. Podulka**
**Joseph J. Krasovec,III**
Schiff Hardin, LLP
660 Sears Tower
Chicago, IL  60606

**ATTORNEYS FOR DEFENDANT GRACO**

**David M. Prichard**
**Leah Kaufman**
Prichard Hawkins, McFarland & Young, LLP
Union Square, Suite 600
10101 Reunion Place
San Antonio, TX  78216

**ATTORNEYS FOR DEFENDNAT HYUNDAI**

       /s/ Andrew L. Payne
       **ANDREW L. PAYNE**